UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JAMES W. SIMMS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00037-SEB-DML |
| | ) | |
| THE MILLARD GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM ORDER

This is a premises liability suit. Plaintiff James W. Simms, III slipped and

fell at the Green Tree Mall in Clarksville, Indiana. He fell in a common area in the

mall's interior after exiting from the Texas Roadhouse restaurant where he and his

wife had dined. Mr. Simms sued the owner of the restaurant (with which he has

now settled) and defendant The Millard Group, Inc., the company that performed

maintenance services for the mall's common area.

Defendant Millard Group has filed a motion [Dkt. 46] for summary judgment

on the claims against it. For the reasons stated below, the motion is DENIED.

## **Summary Judgment Standard**

Summary judgment is appropriate only where there are no genuine disputes

of material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The Court does

not weigh the evidence or evaluate credibility but must view the facts and the

reasonable inferences flowing from them in the light most favorable to the

nonmovant. *McConnell v. McKillip,* 573 F. Supp. 2d 1090, 1097 (S. D. Ind. 2008). "[I]f genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate." *Olayan v. Holder,* 2011 WL 6300615 at *5 (S.D. Ind. Dec. 15, 2011).

## Background

The designated admissible evidence, with all reasonable inferences drawn and all evidentiary conflicts resolved in Mr. Simms's favor, reveals the following.

On Sunday, January 15, 2017, Mr. Simms and his wife had dinner at the Texas Roadhouse restaurant located inside the Green Tree Mall in Clarksville, Indiana. The restaurant has two separate entrance/exit doors for entering or leaving the restaurant's premises. One set of two doors is accessible to and from the mall's interior space. The other entrance/exit is on the mall's exterior building, *i.e.,* from the parking lot. Mr. Simms and his wife entered the restaurant at about 5:15 p.m. After finishing dinner, at around 7:00 p.m., Mrs. Simms exited through the exterior egress to the parking lot to smoke a cigarette and Mr. Simms went to use the restroom inside the restaurant. The restroom is located near the doors to the mall's interior space, or common area. After Mr. Simms left the restroom, he exited the restaurant through the nearby doors to the mall's interior space. The two doors were wide open. He walked a step or two on dark tile covering a small foyer area immediately outside the doors and his feet then stepped onto the mall's light-tiled interior common area. That tile was slick with water. The mall was closed to public access for the day with the entrances/exits closed to visitors arriving from the

outside. The Zamboni cleaning of the concourses was underway. Mr. Simms slipped on the water that had been applied as part of the cleaning process, fell hard to the ground, and broke his hip.

Though the Texas Roadhouse restaurant was still open for business—and would be for a few more hours—when Mr. Simms exited into the mall about 7:00 p.m., as previously noted the mall itself had closed at 6:00 p.m. Mr. Simms did not realize the mall was closed, and there were no warnings that the mall had closed that were visible to him as he exited Texas Roadhouse into the mall. The restaurant had posted permanently-installed signs on each of its two doors leading into the mall which read "Mall Closed Please Exit Through Front Doors Thanks." Though Texas Roadhouse typically closed those doors after the mall closed, which would put the signs in the line of sight of a person facing the doors, on this occasion the doors were left open after the mall had closed and the signs were not in Mr. Simms's line of sight as he exited into the mall, intending to leave through the mall's doors to the parking lot. There were no other signs or other indications outside the restaurant into the mall's interior visible to Mr. Simms to indicate the mall itself was closed.

Millard Group maintenance employees who clean the mall's interior spaces after the mall closes have noticed on multiple occasions that the restaurant's doors are open into the mall's interior after the mall has closed. Texas Roadhouse's lease with the mall owners grants Texas Roadhouse and its customers permission to use the mall's common areas for their intended purposes. In addition, Millard Group's

maintenance personnel had a "major issue" generally with customers walking through the mall when they were trying to clean, tasks that they did not usually even start until at least 15 minutes after the mall closed.

The water that was puddled on the floor where Mr. Simms stepped causing him to slip and fall had come from a malfunctioning floor cleaning machine, a Zamboni-type machine, that was operated by an employee (Trenton Cole) of defendant Millard Group. The floor-cleaning machine is used by driving it—like a Zamboni. It works by laying down a streak of water that then comes into contact with a floor scrubber/squeegee device attached to the machine. If the squeegee falls off the machine, then the amount of water released from the machine flows out in a much greater volume; it puddles and is not squeegeed. Millard Group's cleaning personnel knew at the time of Mr. Simms's fall that if the squeegee falls off, the machine leaves a lot of water on the floors and anyone who walked on them could slip. The scrubber/squeegee is not supposed to fall off the machine, but when that equipment has become old or deteriorated, it routinely falls off. The scrubber/squeegee was in poor condition on the night of January 15, 2017, and Millard Group's maintenance/cleaning personnel had told their superiors that the squeegee needed to be replaced. Millard Group had not replaced it.

Trenton Cole, who was driving the Zamboni-cleaning machine on January 15, 2017, did that job while wearing headphones and watching YouTube videos on his cell phone. That was Mr. Cole's practice when operating the machine and his employer knew it. If the driver of the cleaning machine is paying attention to the

operational sounds of the machine and if the scrubber/squeegee falls off (as it was wont to do), the driver can perceive immediately that the equipment has fallen off and can reattach it. On January 15, Mr. Cole did not realize the scrubber/squeegee had fallen off until long after the machine had left large trails of water all over the floor. While Mr. Cole was nearby but had passed the location of the Texas Roadhouse restaurant, he realized the scrubber/squeegee had fallen off and radioed a co-employee who was working in another section of the mall to ask whether that employee had seen the equipment. That employee, Steven Thompson, located the equipment on the floor and then walked through the mall to give it to Mr. Cole. Had Mr. Cole been paying attention while operating the cleaning machine near the Texas Roadhouse restaurant, he would likely have realized that large trails of water had been left on the floor just outside that restaurant because of the malfunctioning equipment, and he would likely have also seen that the doors from the restaurant into the mall were wide open. Mr. Cole told his co-employee, Mr. Thompson, that he had, indeed, noticed that the Texas Roadhouse restaurant's doors were open.

## Analysis

Millard Group argues that because the mall had closed at 6:00 p.m., it inexorably follows that when Mr. Simms left the restaurant at about 7:00 p.m. through its open doors into the mall's interior space, he was a "trespasser" as a matter of law. As a trespasser, Millard Group asserts that its only duty to Mr. Simms was to refrain from "intentionally injuring him after discovering his presence" on the mall's interior premises and that the undisputed evidence

5

establishes that Millard Group was not aware of Mr. Simms's presence before he fell.

These arguments do not carry the day on summary judgment because, as discussed below, a reasonable fact-finder who views all evidence and inferences in the light most favorable to Mr. Simms could determine that Mr. Simms was not a trespasser and, even if he were, that Millard Group is liable to him.

## I.    A reasonable fact finder could determine that Mr. Simms was not a trespasser.

A person who enters the property of another is either an invitee, a licensee, or a trespasser, and his status determines the nature of the duty the landowner owes to him. *Handy v. P.C. Building Materials, Inc.,* 22 N.E.3d 603, 608 (Ind. Ct. App. 2014). There is no dispute that Mr. Simms was a business invitee when he had been at dinner at the Texas Roadhouse restaurant; he was there for a purpose directly connected with that mall tenant's business operations. *See id.* at 610 n.7. The parties dispute, however, whether Mr. Simms's status as a business invitee automatically changed at the moment he stepped foot on the mall's interior space after the mall had closed. While Millard Group contends that Mr. Simms became a trespasser at that very moment solely because the mall was closed, it has not cited a single case to establish that proposition.[1] However, Mr. Simms has cited a case, *Handy, supra,* for the proposition that a person may indeed have the status of an

---

[1]    Millard Group does not argue it is entitled to summary judgment if a reasonable fact finder could decide that Mr. Simms was either an invitee or a licensee when he stepped onto the mall's interior space.

invitee or a licensee—not a trespasser—when he is on the premises of a business that is closed.

In *Handy,* the plaintiff had visited a building materials retail store on a Saturday, when it was open, to look at countertops for a home-improvement project. A store employee told her that there was a display of countertops on the outside of the store's entrance. The plaintiff looked at those countertops, took some rough measurements, and then returned to the store the following day to look at the countertops again and measure them more precisely. At the time of the plaintiff's return visit, the store was closed, but the countertops remained outside, and as the plaintiff moved around some countertops to better view them, they fell on her and injured her foot. The trial court granted summary judgment to the store on the ground that the plaintiff was a trespasser and the store did nothing to willfully or wantonly expose her to danger.

The Indiana Court of Appeals reversed. It ruled that the mere fact that the store was closed was not dispositive of her status or make her a trespasser. Instead, a trier of fact could infer that the outside countertops were there for the purpose of being viewed by customers after hours and could infer that if the store did not wish for customers to view these items after hours, the store would have done something to keep customers from accessing them. 22 N.E.3d at 609. The Court of Appeals also ruled that a reasonable trier of fact could determine that the plaintiff was either an invitee or a licensee. That status—invitee or licensee— depends on whether the possessor of land has extended either an "invitation"

(resulting in invitee status) or only "permission" (resulting in "licensee" status) to enter the land. An invitation is conduct that justifies others' belief that the possessor *desires* them to enter the land; the invitation may be implied. Permission is conduct that justifies others' belief that the possessor "is willing" that they enter if they desire. The decisive factor, according to the court, is "the interpretation that a reasonable person would put upon the landowner's words and actions given all of the surrounding circumstances." *Id.* In applying these principles, the Court of Appeals determined that a trier of fact could decide—at a minimum—that the plaintiff was a licensee because the store's conduct in leaving its countertops outside for viewing justified others in believing that they could enter the premises if they desired. *Id.* at 610 ("Thus, at a minimum, Handy was a licensee with the privilege to enter the premises by virtue of [the store's] permission or sufferance.")

The Court agrees with Mr. Simms that, taking into account all of the surrounding circumstances, a jury could find that Mr. Simms could reasonably have interpreted the conduct to permit him (or at least to suffer his presence if he desired) to enter into the mall's interior space to reach the outside parking lot after eating dinner and leaving the Texas Roadhouse restaurant. A jury could make the following findings or inferences: Texas Roadhouse's lease grants it and its customers permission to use the mall common areas for their intended purposes, and Mr. Simms's entry onto the mall's interior was consistent with that permission. The landowner and Millard Group knew that Texas Roadhouse was open for business to customers after the mall closes. They knew that Texas Roadhouse

sometimes leaves its doors open to the mall's interior space after the mall closes, but the restaurant is still busy with customers. They knew that on January 15, 2017, the Texas Roadhouse doors into the mall were still open around 7:00 p.m., after the mall had closed. They knew, or reasonably could have known, that when those doors are left open, there is no warning by Texas Roadhouse in the direct line of sight of a Texas Roadhouse customer that he should not exit into the mall's interior space. They knew of their own "major issue" with customers walking through the mall when they cleaned after hours. And they knew that there are no other signs on the mall's interior space to alert a Texas Roadhouse customer that he should not enter into the mall's interior space.

Because a reasonable fact-finder could decide that Mr. Simms was a licensee (or possibly an invitee) when he stepped onto the mall's interior tile for the purpose of exiting out the mall's exterior doors, the court cannot find that Mr. Simms was a trespasser to whom Millard Group is not liable as a matter of law.

## II.  Even if Mr. Simms were a trespasser, the *Taylor* case is readily distinguishable.

Even if a jury were to decide that Mr. Simms was a trespasser, Millard Group is not entitled to judgment. The one case, *Taylor v. Duke,* 713 N.E.2d 877 (Ind. Ct. App. 1999), that Millard Group relies upon to establish that it has no liability to Mr. Simms if he is a trespasser is readily distinguishable from the facts here, at least as those facts are viewed in the light most favorable to Mr. Simms.

In *Taylor,* a homeless person took shelter from the rain next to the back tires of the trailer portion of a semi that was parked at the loading dock at the back of a

9

store.  He fell asleep.  At about midnight, a tractor-trailer arrived at the loading dock to deliver merchandise to the store.  The tractor-trailer's driver routinely made deliveries in the middle of the night and had never before seen anyone in the loading dock area.  The driver unhooked her full trailer at the dock and then positioned her tractor to connect it to an empty trailer in order to drive away with a tractor-trailer combination.  She first illuminated the area around the empty trailer to look for any bottles or debris.  Finding nothing, she drove the tractor-trailer to another part of the lot to conduct an inspection and, at that time, found that she had run over the sleeping man and injured him.  713 N.E.2d at 879.  The court determined that the homeless man was a trespasser because there was no evidence that his presence under the trailer was for a purpose for which the premises were open to the public or that he had express or implied permission or sufferance to be there.  *Id.* at 881.  The court further ruled that the duty to a trespasser is to "refrain from willfully or wantonly injuring him," that that duty *generally* arises after the trespasser's presence is discovered, and because the plaintiff was not discovered until after he was injured, no duty was breached.  *Id.*

The court also addressed, however, the possibility of the defendant's liability for wanton or willful behavior because of an "omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and has opportunity to avoid that risk," separate from the defendant's liability because of reckless disregard for the safety of a specific person. *See id.* at 882.  The court stressed that the tractor-trailer driver had never before seen anyone in the loading

dock area when she made deliveries to the store after it was closed and had specifically illuminated the area around the trailer to look for anything in her way. Because there was no evidence that the defendant "had knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury," the defendant had not breached any duty to the plaintiff.

In contrast to the facts in *Taylor,* a jury in this case could find that the Millard Group (through the knowledge and actions of its employees or its principal, the mall owner) (1) knew that their floor-cleaning equipment was prone to malfunction and to create dangerous puddles or streaks of water on the floor, (2) knew that their employee's habit to wear headphones and watch YouTube videos while operating the floor-cleaning equipment made his work dangerous because he was then unable to perceive when the equipment malfunctioned, (3) knew that the Texas Roadhouse restaurant was open for business after the mall had closed and floor-cleaning was taking place, (4) knew that the doors from the Texas Roadhouse restaurant into the mall common area had been left wide open, and (5) knew that the malfunctioning equipment had created puddles of water in the area near the Texas Roadhouse doors. These factual inferences may permit a jury to conclude that Millard Group is liable because it knew of impending danger from its activities and was indifferent to the consequences, even if it were not specifically aware of Mr. Simms's presence. *See id.* at 882.

## **Conclusion**

Genuine issues of material fact prevent the entry of summary judgment for defendant The Millard Group, Inc.  Its motion for summary judgment [Dkt. 46] is therefore DENIED.

IT IS SO ORDERED.


Dated: _____5/9/2019_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system